## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

THE UNITED STATES FOR THE USE          )
AND BENEFIT OF MMS                     )
CONSTRUCTION & PAVING, L.L.C.,         )
an Oklahoma limited liability company, )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )        Case No. CIV-10-1340-M
                                       )
HEAD, INC., an Ohio corporation;       )
WESTERN SURETY COMPANY,                )
a South Dakota entity; and             )
APAC-CENTRAL, INC., a Delaware         )
corporation,                           )
                                       )
            Defendants.                )

## ORDER

Before the Court is defendants Head, Inc. ("Head") and APAC-Central, Inc.'s ("APAC")

Motion for Summary Judgment, filed July 22, 2011.   On August 12, 2011, plaintiff MMS

Construction & Paving, L.L.C. ("MMS") filed its response, and on August 29, 2011, Head and

APAC filed their reply.   Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

Head is the general contractor under contract with the United States Army Corps of

Engineers ("COE") to repair taxiways at Altus Air Force Base, Oklahoma ("the Project").   In

November 2009, Head solicited a bid from MMS for laying asphalt shoulders on the Project.   On

December 10, 2009, Head sent to MMS that part of the specifications for the Project prescribed by

the COE for the work on which MMS was asked to bid.   MMS was unable to open the attachment

containing the specifications until about a week after receiving it.   MMS alleges that Jim Head, the

president of Head, represented to MMS manager, Mike Matthews, over the phone that there were

no unique requirements for the project and it just required MMS to lay asphalt shoulders.   On December 12, 2009, MMS emailed a bid to Head.   At the time MMS emailed its bid, it had not seen the specifications.

Concerned about some of the COE's strict requirements after reviewing the specifications, MMS had a meeting on February 12, 2010 with Jim Head to discuss issues with MMS's bid.   MMS alleges that at that meeting, Jim Head expressly told MMS it did not have to follow specifications.   MMS also alleges that Jim Head made a number of other representations at that meeting that turned out to be false.   On March 5, 2010, MMS agreed to Head's terms for a subcontract.   On or about May 1, 2010, MMS executed a subcontract with Head and thereafter sent the signed contract to Head, which Head received on May 28, 2010.   On August 16, 2010, MMS terminated the subcontract for failure of payment but offered to perform the work on different terms.   APAC succeeded MMS in performing some of the duties specified in the subcontract.

The specifications for the Project require a specific mix design for the asphalt MMS was to provide.   MMS purchased a mix design meeting the specifications from a third party.   MMS alleges that APAC and Head used this mix design without asking permission from MMS.

Head and APAC now move this Court for summary judgment as to MMS's bad faith/tortious breach of contract claim against Head (Count II), MMS's unjust enrichment claim against Head (Count III), MMS's fraud claim against Head (Count V), MMS's conversion claim against APAC (Count VI), and MMS's unjust enrichment claim against APAC (Count VI).[1]

---

[1]In MMS's Complaint, Count VI is listed twice.

II.    Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts.  Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

A.    Bad faith/tortious breach of contract claim

MMS has alleged a bad faith/tortious breach of contract claim against Head.

> Every contract in Oklahoma contains an implied duty of good faith and fair dealing.  In ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability.

*Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004).  Nevertheless, a cause of action will exist for tortious breach of contract where a "special relationship" exists between the

3

parties and the implied duty of good faith and fair dealing is breached. *See id.* at 561-62. Oklahoma courts, however, have found such a "special relationship" in only very limited circumstances, most notably between an insurer and an insured.

MMS asserts that under the unique facts of this case, a special relationship was formed between Head and MMS when Head used MMS to obtain a low bid for the Project. MMS contends that the relationship between Head and MMS would be similar to a joint venture which carries with it fiduciary duties between members. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to MMS and viewing all reasonable inferences in MMS's favor, the Court finds no "special relationship" existed between MMS and Head to support a tortious breach of contract claim. Specifically, the Court finds the evidence in this case shows that the contract in this case was an ordinary commercial contract negotiated at arm's length between two commercial entities. There is no evidence of unequal bargaining power between Head and MMS or that there was any agreement of a joint undertaking in this case. The evidence submitted in this case shows nothing more than a typical contractor/subcontractor relationship, not the extremely rare "special relationship" required to exist for a tortious breach of contract claim.

Accordingly, the Court finds that Head is entitled to summary judgment as to MMS's bad faith/tortious breach of contract claim.

B.    Conversion claim

MMS alleges that APAC converted MMS's property by utilizing the special asphalt mix design/formula MMS had purchased for $1,750.00. APAC contends that MMS has no cause of action for conversion because the special asphalt mix design/formula is intangible property and no cause of action lies for the conversion of intangible personal property.

"Conversion is an illegal taking of another's personalty inconsistent with his ownership rights. The general rule in Oklahoma is that only *tangible personal property* may be converted." *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla. 1992) (emphasis in original). Tangible property is "[p]roperty that has physical form and substance and is not intangible. That which may be felt or touched, and is necessarily corporeal, although it may be either real or personal (*e.g.* ring or watch)." Black's Law Dictionary 1456 (6th ed. 1990). Intangible property is "property [that] has no intrinsic or marketable value, but is merely the representative or evidence of value . . . ." *Id.* at 809.

Having carefully reviewed the parties' submissions, the Court finds that the special asphalt mix design/formula is intangible property. Accordingly, the Court finds that MMS may not maintain a claim for conversion of the special asphalt mix design/formula. The Court, therefore, finds that APAC is entitled to summary judgment as to MMS's conversion claim.

C.    Unjust enrichment claims

Head and APAC assert that they are entitled to summary judgment as to MMS's unjust enrichment claims against them because MMS has an adequate remedy at law, specifically MMS's breach of contract claim against Head and MMS's conversion claim against APAC, which vitiates the claims for unjust enrichment. In its response, MMS states that it is not attempting to obtain recovery for both breach of contract/conversion and unjust enrichment but that if it is unable to recover on its breach of contract claim and/or its conversion claim, it should still be able to recover under the alternative theory of unjust enrichment.

"[B]efore a party may recover unjust enrichment, there must be enrichment to another coupled with a resulting injustice. However, where the plaintiff has an adequate remedy at law, the

court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment." *Robinson v. Southerland*, 123 P.3d 35, 45 (Okla. Civ. App. 2005) (internal quotations and citations omitted). Nevertheless, while a plaintiff may not recover twice, under Federal Rule of Civil Procedure 8(d)(2), he may plead an equitable claim in addition to a legal remedy. Rule 8(d)(2) specifically permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2).

Having carefully reviewed the parties' submissions and MMS's Complaint, the Court finds that MMS's breach of contract claim against Head and MMS's unjust enrichment claim against Head are alternative theories of recovery. Because no judgment has been entered in favor of MMS on its breach of contract claim, and because MMS has submitted sufficient evidence to create a genuine issue of material fact as to its unjust enrichment claim against Head, the Court finds that Head is not entitled to summary judgment as to MMS's unjust enrichment claim.

Additionally, as set forth in Part B above, the Court has granted summary judgment in favor of APAC as to MMS's conversion claim. Because MMS does not have an adequate remedy at law, and because MMS has submitted sufficient evidence to create a genuine issue of material fact as to its unjust enrichment claim against APAC, the Court finds APAC is not entitled to summary judgment as to MMS's unjust enrichment claim.

> D.      Fraud claim

MMS alleges that Head made certain false representations to induce MMS to enter into the subcontract. Head contends that no false representations were made and that because MMS had the specifications for the Project in its possession, it was fully aware of the requirements when it signed the subcontract and, thus, MMS can not maintain a claim for fraud.

> The elements of actionable fraud are that the defendant made a material representation that was false, that he knew when he made the representation that it was false, and that he made it with the intention that it should be acted upon by plaintiff, and that plaintiff acted in reliance upon it and thereby suffered detriment.

*Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 176-77 (Okla. 1988).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to MMS and viewing all reasonable inferences in MMS's favor, the Court finds that MMS has set forth sufficient evidence, albeit barely, to create a genuine issue of material fact as to each element of actionable fraud. Specifically, the Court finds that MMS has submitted evidence that Head made material representations that were false, that Head knew these representations were false, that Head made the representations with the intention that they should be acted upon by MMS, and that MMS acted in reliance upon them and thereby suffered detriment. Further, the Court finds that while it is undisputed that MMS had the specifications for the Project in its possession prior to entering into the subcontract, MMS has submitted evidence showing that Head made certain allegedly false representations after MMS had reviewed the specifications regarding the applicability and details of the specifications.

Accordingly, the Court finds that Head is not entitled to summary judgment as to MMS's fraud claim.

E.    Punitive damages

To recover punitive damages, there must be an underlying tort. *See Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 905-06 (Okla. 2006). Because this Court has found that MMS's fraud claim survives Head's motion for summary judgment, and based upon the facts alleged in

connection with MMS's fraud claim, the Court finds that summary judgment should not be granted as to MMS's claim for punitive damages against Head.

IV.  Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Head and APAC's Motion for Summary Judgment [docket no. 24] as follows:

(A)  The Court GRANTS the motion for summary judgment as to MMS's bad faith/tortious breach of contract claim against Head and MMS's conversion claim against APAC, and

(B)  The Court DENIES the motion for summary judgment as to MMS's unjust enrichment claims against Head and APAC, MMS's fraud claim against Head, and MMS's claim for punitive damages against Head.

**IT IS SO ORDERED this 18th day of October, 2011.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE